UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 4:13-cr-30064-MJR-1 |
| ) | |
| JAMES S. BEDELL, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM**

COMES NOW Defendant, James S. Bedell ("Bedell"), by and through counsel, and files the following memorandum for sentencing:

### I.    Introduction

On April 17, 2013, Bedell pled guilty as charged on all four counts in violation of 18 U.S.C. §666(a)(1)(A). *See* Presentence Investigation Report [hereafter PSR] at ¶¶ 1-2. Bedell entered the plea pursuant to an open plea agreement. The PSR calculates a guideline imprisonment range, based on Total Offense Level of 15 and a criminal history category of I, at 18 – 24 months. *Id*. at ¶ 58. For the reasons listed below, Bedell's history and characteristics, including his lack of criminal history and service as a law enforcement officer, early attempted cooperation with authorities and acceptance of responsibility suggest that a sentence of probation is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing.

### II.    Bedell's History and Characteristics

James S. Bedell was born on October 18, 1955, in Chicago, Illinois. *See* PSR at ¶ 35. He was born to Ronald James Bedell and Dorothy Mae Bedell (nee Grames). *Id.* Both of his parents are now deceased. *Id.* His mother died in 1970 and his father died in 1995. *Id.* His father was an alcoholic but was not abusive. *Id.* His mother died when he was 15 years old.

*Id.* at ¶ 36. His brother also died, at age 14, from being hit by a car. *Id.* Further, another brother, Mark Bedell, died approximately four or five years ago. *Id.*

Mr. Bedell was married on Feburary 5, 1977 in DuPage County, Illinois to Debra Arend. *Id.* at 38. He has two adult children. Id.  Mr. Bedell currently lives with his wife and father-in-law, Aloysius Arend, in Downers Grove, Illinois. *Id.* at 39. Mrs. Bedell describes him as a "very good person, dad and husband" who did "something stupid," referring to the instant offense. *Id.* at 40.

Mr. Bedell has been diagnosed with diabetes, high blood pressure and high cholesterol. *Id.* at 41. He currently takes several medications. *Id.* He has been hospitalized twice for kidney stones, once in December 2004 and again in July 2011. *Id.* Mr. Bedell has also been diagnosed with pathological gambling, major depressive disorder and panic disorder without agoraphobia. *Id.* at 43. In October 2012, he planned to commit suicide in relation to this current offense. *Id.* His family convinced him not to do so and his son took his gun. *Id.*

Mr, Bedell began gambling in 2007 and last gambled in 2012. *Id.* at 44. He reports losing $40,000 gambling in 2012. *Id.* He lost approximately $1000 a week by the end of his gambling habit. *Id.* He did not abuse alcohol or any other substance. *Id.* at 46.

Mr. Bedell has a Master Degree in Liberal Arts from North Central College of Naperville, Illinois. *Id.* at 47. He also has a Bachelor of Arts in Criminal Justice from Governors State University in University Park, Illinois. *Id.* Currently, Mr. Bedell works part time at Napa Auto Parts in Glen Ellyn, Illinois. *Id.* at 48.  From September 2007 to October 2012, he served as Chief of Police with the Edwardsville, Illinois Police Department. *Id.* at 49. From September 1983 to September 2007, he was employed with the Naperville, Illinois Police Department as a Commander. *Id.* at 50.

### III.     The Nature of the Offense

From June 2009 through October 5, 2012, Defendant, as Chief of Police for the Edwardsville Police Department, embezzled, stole, obtained by fraud and knowingly converted to his own use, money, funds, and property which was owned by and under the custody and control of the City of Edwardsville in violation of 18 U.S.C. §666(a)(1)(A). The nature of the funds was cash and money orders received by the City of Edwardsville Police Department for towing and impound fees.

### IV.     Attempted Cooperation

Upon the motion of the government, U.S.S.G. § 5K1.1 provides for a departure from the applicable guideline range where a Defendant has "provided substantial assistance in investigating or prosecuting another person." U.S.S.G. § 5K1.1. The extent of a sentence reduction for substantial assistance is determined by a sentencing court, taking into account the following factors:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. 5K1.1(a).  *United States v. Marks*, 244 F.3d 971, 973 n.1 (8th Cir. 2001).

In this case, while Defendant Bedell cooperated completely and truthfully with the Government's investigation, he anticipates that the Government does not intend to file a substantial assistance motion.  Nevertheless, Defendant's attempted cooperation is a factor to be considered under § 3553(a).  *United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir.2006).

*See also U.S. v. Truman*, 304 F.3d 586 (6th Cir. 2002) (district court erred in failing to consider downward departure under § 5K2.0, where defendant arrested for theft of large quantities of controlled substances from a lab subsequently provided information that led to upgrades in the security procedures used by the lab, even in the absence of a government motion for cooperation based on § 5K1.1); *U.S. v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) (probation imposed for tax fraud, despite guideline range of 10-16 months and Government's refusal to file a 5K1.1 motion, based on defendant's cooperation, acceptance of responsibility, payment of restitution, minimal risk of recidivism, and stress suffered prior to sentencing). Moreover, such cooperation bears directly on a defendant's character and on how severe a sentence is necessary to provide deterrence and punishment, whose consideration is mandated by § 3553(a)(1) and (2). *United States v. Milne*, 384 F.Supp.2d 1309, 1312 (E.D.Wis.2005) (holding that post-*Booker*, "courts may grant additional consideration to defendants who demonstrate acceptance beyond that necessary to obtain a two or three level reduction under § 3E1.1" because "such conduct bears directly on their character, § 3553(a)(1), and on how severe a sentence is necessary to provide deterrence and punishment, § 3553(a)(2)").

Defendant Bedell's cooperation was timely, complete and truthful. He proffered with the Government prior to being charged in this matter and provided a full and truthful account of his involvement in the instant offense. However, due to the nature of the offense, he had little information to contribute about any other individuals that the Government considered "useful." Such prompt and full cooperation suggests that a sentence below the calculated guideline range is appropriate in this case.

### V. Bedell is a True First Offender and His History and Characteristics Indicate That He Poses a Reduced Risk of Recidivism

Congressional legislation identifies Mr. Bedell as among the offenders who generally merit a sentence of probation. In delegating sentencing authority to the United States

Sentencing Commission, Congress directed the Commission to impose sentences "other than imprisonment" on non-violent first offenders who commit other than serious offenses.

> The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

*See* 28 U.S.C. § 994(j).  Bedell is a first offender who committed a non-violent offense. Congress, moreover, identifies his offense as relatively non-serious by assigning to its offenders a range of punishment that permits probation and limits imprisonment to not more than ten years.  *See* 18 U.S.C. 666.  In addition, 28 U.S.C. § 994(n) states:

> The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

28 U.S.C. § 994(n).  Bedell's cooperation reinforces the indication of 28 U.S.C. § 994(j) that Bedell is among the offenders who generally merit a sentence of probation.

United States Sentencing Commission data support this classification.  *See e.g.,* United States Sentencing Commission, <u>Measuring Recidivism</u>: <u>The Criminal History Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the United States Sentencing Commission's Legislative Mandate</u>, 16 (May 2004) [hereinafter <u>Recidivism Report</u>]; <u>Recidivism And The "First Offender": A Component of the Fifteen Year Report on the United States Sentencing Commission's Legislative Mandate</u> (May 2004) [hereinafter <u>First Offender Report</u>].  The Guidelines deem "first offenders" generally less culpable and less likely to re-offend than all other offenders.  *See* <u>First Offender Report</u> at 1.  However, the Guidelines broadly define first offender status.  *Id; see*

5

*also* U.S.S.G. §§ 4A1.1. The Commission, in fact, concedes it can narrow the definition to better identify those offenders who prove least culpable, least likely to re-offend, and therefore most deserving of the leniency recommended by 18 U.S.C. § 994(j). *Id.* In an on-going effort to do so, the Commission collected data on three categories of first offenders: those with no criminal history points and (i) no prior arrests, (ii) prior arrests but no prior convictions or (iii) prior convictions counted under U.S.S.G. § 4A1.2(c)(2) only. *See id*. at 5. The Commission denominated the groups A, B and C, respectively. *Id.* It drew the following conclusion from its analysis:

> From both culpability and recidivism risk perspectives, group A offenders with no prior arrests, most strongly meet the conceptual definition of the first offender category. Offenders in group A have had no recorded contact with the criminal justice system prior to their instant federal offense. Moreover, as indicated by their extremely low recidivism rate, 6.8%, they are easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend.

*See id*. at 17. Bedell had no adverse contact with the criminal justice system prior to commission of the instant offense; he, therefore, falls within group A. *See* PSR at ¶¶ 32-35. Accordingly, United States Sentencing Commission data also identify Bedell as among the offenders who most merit a sentence of probation.

Other United States Sentencing Commission data reinforce the conclusion that Bedell presents a very low likelihood of recidivism. The criminal history measure of the guidelines estimates recidivism likelihood. The measure relies on two offender characteristics: prior convictions and prior terms of incarcerations. *See* U.S.S.G. § 4A1.1. *See also* Paul J. Hofer & Mark H. Allenbaugh, The Reason Behind the Rules: Finding and Using the Philosophy of the Federal Sentencing Guidelines, 40 AM. CRIM. L. REV. 19, 24 (2003). The United States Sentencing Commission's 15 Year Report, however, concludes that the measure's predictive power would improve if it incorporated additional offender characteristics. *See* United States Sentencing Commission, Measuring Recidivism: The Criminal History

6

Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the United States Sentencing Commission's Legislative Mandate, 16 (May 2004) [hereinafter "Measuring Recidivism"].

Recidivism rates decline consistently as age increases. *Id.* at 12, 28. Offenders in Criminal History Category I under the age of 21 recidivate at a rate of 29.5%, and offenders between the ages of 21 and 25 recidivate at a rate of 22.3%. *Id.* at 28. In comparison, offenders in Criminal History category I over the age of 50 recidivate at a noticeably lower rate: 6.2%, 23.3% less than those under the age of 21 and 16.1.% less than those between 21 and 25 years of age. *Id.* Bedell is 57 years old. PSR at ¶ 35.

Stable employment correlates with recidivism rates for offenders in the lowest criminal history categories. *See* Measuring Recidivism at 12, 29. Criminal History Category I offenders with stable employment in the year prior to their instant offense recidivate at a rate of 12.7%. *Id.* at 29. Unemployed offenders in that same Criminal History Category recidivate at a rate of 20.6%. *Id.* Bedell has a history of consistent steady employment. PSR at ¶¶ 48 - 51.

Illicit drug use correlates with recidivism rates, as well. *See* Measuring Recidivism at 13, 29. Criminal History Category I offenders who use illicit drugs in the year prior to their instant offense recidivate at a rate of 21.9%. *Id.* Offenders in that same Criminal History Category who do not do use illicit drugs recidivate at a rate of 10.8%. *Id.* Mr. Bedell has not used or experimented with illicit drugs. PSR at ¶ 50.

Educational attainment also correlates with recidivism rates. *See* Measuring Recidivism at 12, 29. Criminal History Category I offenders who have not graduated from high school recidivate at a rate of 21.3%. Offenders in the same Criminal History Category who have completed high school recidivate at a lower rate of 10.6%, more than 10% less than those who have not graduated from high school. Although Criminal History Category I

7

offenders who have some college recidivate at a rate of 13.9%, those that are college graduates recidivate at a rate of 7.1%; 14.2% less than those without a high school education, 3.5% less than those with some college, and 6.8 % less than those with some college education.  Mr. Bedell graduated rom Governors State University in University Park, Illinois with a Bachelor's degree and from North Central College in Naperville, Illinois with a Master's degree in 2009.  PSR at ¶ 47.

Finally, marital status correlates with recidivism.  *See* Measuring Recidivism at 12, 29.  Criminal History Category I offenders who have never married recidivate at a rate of 22.7 %.  *Id.* at 29.  Offenders in the same category who are married recidivate at a more than 12% lower rate, 9.8%.  *Id.*  Bedell was married to his wife, Debra Bedell (nee Arend) in 1977.  PSR at ¶ 38.

Mr. Bedell's history and characteristics indicate that he poses a reduced risk of recidivism.  This indication is supported by his current and continuing employment, and his prompt cooperation with the Government's investigation.  This information reinforces the suggestion, taking into account 28 U.S.C. § 994(j) and (n), that a sentence of probation is appropriate in this case.

### VI.     Bedell's Public Service as a Police Officer is Indicative of His Strong Character and Low Risk of Recidivism.

Mr. Bedell served his community as Chief of Police with the Edwardsville, Illinois Police Department for over five years following his nearly twenty-five year tenure as a Commander with the Naperville, Illinois Police Department. In total, Bedell has served nearly thirty years as a law enforcement officer between the two departments.

Sentencing courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" for sentencing purposes. 18 U.S.C. § 3553(a)(1). Defendant argues that his nearly thirty years of service to his community should be considered in evaluating "the history and characteristics of the defendant."  *See United States*

*v. Frazier*, No. CR 12–1572 JB, 2013 WL 499245 (D.N.M. Feb. 4, 2013) (finding a law enforcement officer's nearly unblemished employment record a factor in favor of a downward variance to a sentence of probation). *See also United States v. Autery*, 555 F.3d 864, 874 (9th Cir. Or. 2009) (recognizing that "a defendant's law enforcement service could, in certain circumstances, constitute a mitigating factor in sentencing because a former law enforcement officer has shown at some point in his past that he can lead an honorable and responsible life"). Mr. Bedell's law enforcement career, which, until now, has been unblemished, demonstrates this strong character.

In combination with his low risk of recidivism and other factors, Mr. Bedell's law enforcement career supports a sentence significantly below the calculated guideline range is sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in 18 U.S.C. § 3553.

### VII.    Conclusion

Mr. Bedell is a father and husband who served a distinguished career in law enforcement. In the grips of a gambling addiction, he stole funds that belonged to the City of Edwardsville, risking and losing his employment in the process. He is a first offender and his history and characteristics indicate that he poses a reduced risk of recidivism. His police service is indicative of his strong character and, again, his low risk of recidivism, a lessened risk that is supported by his decision, when confronted about the instant offenses, to promptly and completely cooperate with the Government's investigation. For all these reasons discussed in the foregoing memorandum, Defendant, James Bedell, respectfully requests that this Honorable Court impose a non-guideline sentence of probation in this matter.

Dated: September 4, 2013 	Respectfully Submitted,

ROSENBLUM, SCHWARTZ, ROGERS & GLASS, PC

By: 	/S/	John P. Rogers
JOHN P. ROGERS, MO Bar No. 38743
120 S. Central Avenue, Suite 130
Clayton, Missouri 63105
(314) 862-4332
Facsimile (314)862-8050
jrogers@rsrglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2013, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Mr. Norman R. Smith, assistant United States attorney.

**Defendant's Sentencing Memorandum**

By: 	John P. Rogers
JOHN P. ROGERS, MO Bar No. 38743
120 S. Central Avenue, Suite 130
Clayton, Missouri 63105
(314) 862-4332
Facsimile (314)862-8050
jrogers@rsrglaw.com